UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| **JUSTIN BARKER**<br>Plaintiff<br><br>v.<br><br>**LOUISIANA SCHOOL FOR MATH, SCIENCE, AND THE ARTS**<br>Defendant. | CASE NO. 1:21-cv-04419<br><br>JUDGE DRELL<br>MAGISTRATE JUDGE PEREZ-MONTES |

## PLAINTIFF'S BRIEF IN SUPPORT OF MOTION FOR SANCTIONS

Plaintiff Justin Barker, by and through undersigned counsel, respectfully submits this Motion for Sanctions and Brief in Support, and asks this Honorable Court to levy sanctions against Defendant Louisiana School for Math, Science, and the Arts ("LSMSA") pursuant to Rule 37(e) Fed. R. Civ. P. for failure to preserve electronically stored information; spoliation of evidence under Rule 37 and 18 U.S.C. § 1519; Rule 37(a)(4) for evasive or incomplete disclosure; Rule 37(b)(2) for failure to comply with a court order; violation of Louisiana public records laws under RS 14:132; violation of 18 U.S.C. §§ 1621 and 1623 for perjury; and violation of La. and ABA Model Rules 3.3, 3.4, and 8.4.

Rule 37 requires a party seeking to impose sanctions to serve the motion upon the nonmoving party before filing the motion with the court. The moving party cannot file such motion with the court if the challenged items are withdrawn, corrected, or appropriately modified within 21 days after service. Copies of this Motion, Brief in Support, and Exhibits were delivered to Defendant on April 5. 2023. The safe harbor window has closed, and Defendant has not yet provided any items that challenge, withdraw, correct, or appropriately modify the information alleged in the pleading other than to state they've issued subpoenas to Verizon Wireless.

# I. BACKGROUND

On December 14-15, 2022, Plaintiff and Defendant conducted in-person depositions at Defendant counsel's office in Monroe, La. On Dec. 14, Dr. Kristi Key, Sheila Kidd, and Dr. John Allen were deposed by Plaintiff's counsel. LSMSA Executive Director, Dr. Steve Horton, was present at those depositions as business representative, during which he spent a significant portion of the day typing on his cell phone. The following day, Dec. 15, Dr. Horton was deposed by Plaintiff's counsel, followed by the deposition of Plaintiff Justin Barker by Defendant's counsel.

During the deposition of Dr. Steve Horton, Plaintiff questioned Dr. Horton about his phone usage the prior day. At first, he stated there were no texts (Ex. A, Horton Depo at pp. 43-44). Plaintiff's counsel instructed Horton and defense counsel to preserve text messages from the previous day. An off-the-record conversation between counsel then ensued. *Id.*

Immediately upon resuming on-the-record deposition testimony, Horton changed his testimony to state that he had, in fact, exchanged texted with other witnesses the day prior. (Ex. A, Horton Depo at p. 44), but offered that those messages were "benign" conversations.

Following those depositions, Plaintiff sent a third-party discovery request to Verizon and sent a courtesy copy of the request to Defendant.

On Jan. 11, 2023, Defendant filed a Motion to Quash, citing improper procedure and that, should the Court allow the flawed discovery, the information sought "is overly broad, wholly irrelevant to the underlying case, and only designed to harass defendant's witness." Defendant further argued that lengthy deposition testimony had been given and that Plaintiff had been afforded ample opportunity to discuss cell phone usage. ([Doc. 22](Doc. 22)).

On Jan. 19, 2023, Plaintiff timely filed her response to the Motion to Quash, along with a concurrent filing of a Motion to Compel discovery on requested Title IX documents. (Docs 24 and 25). Additionally, Plaintiff submitted her first supplemental discovery requests to Defendant on the same day, which included requests for Dr. Horton's call/text message logs listed as Interrogatory No. 5, which stated:

> ALL CALLS, TEXT MESSAGES, and PHONE USAGE BY or TO the FOLLOWING CELLULAR PHONE NUMBER listing time, date, duration and number called for 12/1412022 and 12/15/2022.

On Jan. 24, 2023, Defendant filed a Reply in Support of their Motion to Quash. (Doc. 29). In their Reply, Defendant stated "Each witness was properly sworn and provided testimony while under oath. There is absolutely no evidence to suggest a witness was untruthful … Plaintiff's argument in this regard is mere conjecture . . ." *Id.*

This Court held a hearing on both the Motion to Compel and Motion to Quash on March 7, 2023. At this hearing, Plaintiff explained the behaviors of Dr. Horton during witness depositions and argued that their request for his phone records pointed to a larger credibility issue – such as whether witness tampering had occurred or if information was exchanged in efforts to "get stories straight." Regarding the Motion to Quash, the Court ruled as follows:

> The Court construes it as a motion addressing a request for production of documents made to Defendants (the Court considers Verizon out of it.) 2) The Court grants it as an Interrogatory and Request for Production and orders Defendant to treat it as such & view the following as discoverable: a) information contained on only Dr. Horton's phone; b) phone calls & texts only; c) only during the 2 days of depositions on the 14th and the 15th; d) only communications made to other deponents including Mr. Allen; e) anything to do with this case or the depositions taking place.

(Doc. 31).

## II.     INTERROGATORY NO. 5 & CELL PHONE RECORDS OF DR. HORTON

On Wednesday, March 29, 2023, Defendant's counsel emailed a Supplemental Discovery Response to Interrogatory No. 5 to Plaintiff's Counsel (Ex. B), which contained information in narrative format as well as screenshots of text messages sent between Dr. Horton and Dr. Allen on Dec. 14, 2022. Defendant's supplemental response to Interrogatory No. 5 was problematic for the following reasons:

A. **<u>Perjury under 18 U.S.C. §§ 1621 and 1623 was committed when Dr. Horton testified under oath that text messages sent while attending depositions were "benign" and "had nothing to do with this [deposition]."</u>**

- Text messages regarding the deposition were indeed exchanged between Dr. Horton and Dr. Allen on Dec. 14, 2022. (Ex. B at 4-7).
    - These text exchanges occurred *prior* to Dr. Allen's mid-afternoon deposition on Dec. 14.
    - Dr. Horton was in the deposition room while sending and receiving these text messages.
    - Dr. Horton committed perjury when he testified under oath that specifically stated in his deposition testimony that any texts were "benign conversations" or that they had "nothing to do with this [deposition]." (Ex. A, Horton Depo, p. 44).
    - However, those texts clearly show that discussions were had regarding the deposition at hand, including instructions for what to clarify.
    - Defendant's attorneys adamantly argued in multiple Court filings *and* oral arguments before this Court on March 7, 2023 that any texts were "benign" and/or not relevant.

B. **<u>Defendant admitted to the deletion of text messages in their supplemental response. Such deletion is spoliation under Fed. R. Civ. P. 37(e) and a violation of La. Open Records RS 14:132</u>**

- Defendant admitted to the destruction of text messages between Dr. Horton and Dr. Key in the supplemental response, stating they were deleted before receiving notice to preserve the messages. (Ex. B, Def. Resp. to Supp. Disc. at 2)

Page 4 of 13
*Barker v. LSMSA*
*Brief in Support of Motion for Sanctions*

- Plaintiff's attorney requested the preservation of these messages *the morning of* Dec. 15, 2022. (Ex. A, Horton Depo p. 43-44).
- Defendant is a state agency and Dr. Horton is a state employee. As such, the destruction of any communications is a violation of Louisiana Open Records Act. (Ex. C, Horton Depo at 9-13).

C. **Omitted responses violated Rule 37, as well as ABA and La. Model Rules of Professional Conduct 3.3, 3.4, and 8.4**

- Instead of disclosing the text times/information between Horton and Allen from Horton's phone, Defendant skirted the issue by providing messages from Dr. Allen's phone as a substitute for the original request from Dr. Horton's phone. (Ex. B at 2.)
- Defendant omitted any response as to whether Dr. Horton had deleted text messages between himself and Dr. Allen, but stated that texts between Dr. Key and Dr. Horton had been deleted by Horton. (*See generally*, Ex. B.)
  - These sidesteps caused Plaintiff to expend additional time seeking clarification.

The next day, Thursday, March 30, 2023, Plaintiff submitted the following request to Defendant:

> After reviewing the supplemental discovery, could you provide a detailed phone bill for Dr. Horton for the two days of the depositions? If not, we will need to ask the judge for an in-camera review of this document.
> Also, could you provide the times of all text messages which are indicated on Dr. Horton's detailed phone bill which show sent to and received by John Allen.
> Finally, please ask your clients to preserve all data on their phones, computers, electronics, and social media accounts (Horton, Key, and Allen). This should include iCloud and other backup services that may need to be utilized to obtain the now deleted text messages from Horton's phone.
> Ms. Mai asked Horton in his deposition to preserve the text messages. She also asked him if he spoke about this case in the messages. We see from what John Allen produced that is not the case. We consider this to be the spoliation of evidence and will be asking the Court for an Order reflecting this.

(Ex. D).

**D. <u>Evasive and incomplete disclosures violate Rule 37(a)(4), and in this case, is also a violation of Rule 37(b)(2).</u>**

On Monday, April 3, 2023, at 12:03 p.m., Defendant provided a redacted copy of what appeared to be Dr. Horton's phone bill. (Ex. E).[1] This document highlighted even more problems, which causes Plaintiff to even further question the validity of the cell phone records and discovery disclosures. These issues are:

- Defendant's discovery response stated that text messages between Dr. Horton and Dr. Key had been deleted prior to the preservation request. However, the phone bill showed there were text messages to/from Dr. Horton and Dr. Key on Dec. 15, 2022, which was *after* Plaintiff's counsel had instructed Defendant to preserve messages. Were those also deleted?
- NONE of the texts to/from Dr. Allen on Dec. 14 are on the phone bill. Screenshots from Dr. Allen's phone showed multiple date-stamped messages to/from Dr. Horton on Dec. 14. The phone bill shows none of them. (Ex. E.)[2]
- According to the phone bill, there are NO text messages sent to/from anyone during the times that correspond with Dr. Allen's screenshots. (*See generally,* Ex. E.)
- Several portions of the bill show suspicious time gaps that are not within the pattern of other activity during those two days. [3]*Id.*
- Suspiciously, Dr. Horton has almost NO text messages sent from his phone on Dec. 14 during the hours of the deposition, despite being on his phone near-constantly for several hours and despite disclosures from Dr. Allen's phone that show communications to the contrary. *Id.*

---

[1] Exhibit E is an annotated copy of Dr. Horton's phone bill. Plaintiff's markings on the exhibit show suspicious gaps or patterns, times where text messages from Dr. Allen should have been listed, and messages not received by Plaintiff (or accounted for by Defendant).
[2] This is indicated on the exhibit with red arrows.
[3] This is indicated on the exhibit with green boxes.

- The phone bill shows text message exchanges between Dr. Horton and Dr. Allen on Dec. 15. However, Defendant did not provide screenshots of those from Dr. Allen's phone like they did for Dec. 14 communications, nor did they make mention as to why those might be missing. *Id.*

Plaintiff replied to Defendant within the hour (at 12:59 p.m.) with a clarifying question.

> The supplemental response states that Dr. Horton deleted the text messages between himself and Dr. Key. Can you confirm whether Dr. Horton did the same thing with the text messages between himself and Dr. Allen?

(Ex. F.)

As of the submission of this Motion, no response has been received.

### E. **Dr. Horton is CEO and Executive Director of LSMSA. Perjury and spoliation by him casts doubt on the entirety of discovery (and this case).**

Steve Horton is the CEO and Executive Director of LSMSA. In his own words, Dr. Horton is

- "*superintendent of the district*"
- "*ultimately responsible for the entire operation of the school*"
- "*only one that has the authorization to hire and fire of* (sic) *any employees*"
- "*the 110 employees at the school are all at-will employees and they're renewed, hired, fired all under my sole decision*"
- "*it's a total responsibility for the operation of the school*"

(*See generally* Ex. C.)

He participated in the depositions as Defendant's representative. In fact, there is nobody else in the LSMSA structure who could even be a business representative. Therefore, the Court should consider that any perjury committed by Dr. Horton is imputed upon Defendant LSMSA for the reasons listed in this Motion. Further, and along the same vein, any spoliation or violations of other laws committed by Dr. Horton – or at his instruction – would be imputed to Defendant.

As stated above, Dr. Horton tampered with the testimony of Dr. Allen by sending text messages of privileged information to him in efforts to coach him prior to his deposition and to explain items in what appears to be attempts to "get the stories straight." He also perjured himself regarding those messages. He had opportunity to offer the truth throughout the remainder of the deposition and in the time since December to adjust his story. In fact, he *did* alter his testimony at least once in the deposition and could have done so again.

> **INTERROGATORY NO. 9:**
> Provide any and all copies of handwritten notes taken by Sheila Kidd during the investigations into the complaints /grievances filed by Dr. Kristi Key and Dr. Justin Barker.
> **ANSWER TO COMPLAINANT'S INTERROGATORY 9:**
> None.
> **INTERROGATORY NO. 10:**
> Provide any and all copies of typed notes taken by Sheila Kidd during the investigations into the complaints /grievances filed by Dr. Kristi Key and Dr. Justin Barker.
> **ANSWER TO COMPLAINANT'S INTERROGATORY 10:**
> None.

Perjury and tampering of witness testimony serious offenses that can carry civil and/or criminal penalties.[4] Moreover, these offenses call into doubt the entirety of discovery and litigation which was undoubtedly overseen by Dr. Horton (and will still be overseen by him until the close of this matter) and can alter the outcome of this case. His oversight is explicitly noted in Defendant's Responses to Plaintiff's Supplemental Discovery request. (Ex. G at 1). Lack of credibility has cast an ominous shadow on this case, which could alter the outcome of the case, prevent Plaintiff from receiving a fair and equitable outcome, and is contrary to the interests of justice.

### III.  **FURTHER ACTS OF SPOLIATION**

---

[4] Plaintiff recognizes that criminal actions are outside the purview of this Court, and such actions contain their own burdens and rights. However, Plaintiff leaves it to this Court whether to impose civil, evidentiary sanctions, contempt orders, or referrals to other channels of justice.

During Plaintiff's deposition of Sheila Kidd, LSMSA's Human Resources Manager, Kidd testified that she shredded the notes she took during interviews with several witnesses during Plaintiff's Title IX investigation. (Ex. H, Kidd Depo at 25-26). This is in violation of Title IX recordkeeping policies, which requires retention of documents for seven (7) years. 20 U.S.C. §§ 1681-1688.[5] Further, Plaintiff filed an EEOC Complaint the month after being terminated from her employment at LSMSA, which means that Kidd and LSMSA had sufficient notice of impending litigation. Destruction/shredding of those documents was in violation of standard spoliation requirements.

Kidd's testimony is further supported by the fact that Defendant's response to Interogatory Nos. 9 and 10 is "none" when Plaintiff asks for handwritten notes. In Interrogatory No. 11, Defendant responds that the notes were given to Ruth Prudhomme and it's unknown what happened to them after that.[6]

> **INTERROGATORY NO. 11:**
>
> State with specificity the notes taken by Sheila Kidd during the investigations into the complaints /grievances filed by Dr. Kristi Key and Dr. Justin Barker, whether or not they still exist, and identify all locations where these documents could now reside.
>
> **ANSWER TO COMPLAINANT'S INTERROGATORY 11:**
>
> The notes by Sheila Kidd were provided to Ruth Prudhomme during the investigation in Spring 2020. It is unknown what happened to the notes thereafter.

This response is problematic for multiple reasons: 1. It's in violation of Title IX recordkeeping requirements; 2. It directly contradicts testimony given by Kidd herself. (Ex. H). This contradiction lends itself to the inference that Plaintiff is not receiving accurate information in her discovery requests.

---

[5] 2020 Final Rule § 106.45(b)(10).
[6] Ruth Prudhomme has since retired from LSMSA.

In addition, Defendant's discovery responses indicate that they do not have records of a Title IX investigation that was done when a complaint was filed against Dr. John Allen. This, too, is a violation of Title IX recordkeeping policy and could be further evidence of spoliation.

> **INTERROGATORY NO. 7:**
>
> Provide any and all copies of investigation files, notes, reports, witness statements, handwritten notes, typed notes, etc. related to the Title IX investigation conducted by Attorney Melissa Losch into John Allen in 2020 as was testified to in the Dec. 14-15, 2022 depositions.
>
> **ANSWER TO COMPLAINANT'S INTERROGATORY 7:**
>
> None in defendants' possession.

Defendant does not appear to have any recordkeeping or retention policies, nor is there any consistent routine by which such a policy could be construed. As such, Defendant is not protected by the Safe Harbor provision of Rule 37.

## IV. CONCLUSION

From filing a Motion to Quash, a reply to Plaintiff's response to that Motion, participating in oral arguments on the issue, and producing jello-like responses to Interrogatory No. 5, Defendant has gone to extraordinary lengths to protect the phone records of Dr. Horton, despite his communications being subject to open records laws. Once a Court order was in place and such items were "produced,"[7] even more questions arose about the credibility of Defendant's actions.

If a Defendant is willing to dishonor the sanctity of this Court and its judicial authority, it stands to reason that a Plaintiff with no authority or power certainly stands no chance against such a Defendant. And if a Defendant is not willing to offer the truth in order to ensure their own credibility, then doubt becomes cast over every piece of litigation and discovery.

---

[7] Plaintiff contends that there is suspicious activity with the phone logs of Dr. Horton, since items were missing that had been provided via other responses.

Page 10 of 13
*Barker v. LSMSA*
*Brief in Support of Motion for Sanctions*

Ample opportunity has existed for Defendant to offer "the truth" regarding text conversations during deposition testimony, but there have been no attempts to do so. Defendant may contend that by providing discovery responses to Interrogatory No. 5 that they've offered the truth; however, this information would not have been provided were it not for an order by this Court. Further, by providing the discovery response, even more bad faith and concealment of evidence has been shown – which is what Plaintiff suspected all along.

Defendant's deceits have been deliberate, willful, repeated, and substantial. This behavior goes right to the very heart of these proceedings. Plaintiff's firm has litigated for 40 years and believes that, as a rule, discovery disputes are almost always best addressed through the good faith efforts of the litigants and without the involvement of the Court. That has very much been our practice and experience. This case presents to the undersigned a level of concealment, spoilation, and intentional subterfuge that has, quite candidly, not been seen by us in decades. Therefore, we feel we have no choice but to pray for the severe and immediate intervention of this honorable Court.

**PRAYERS FOR RELIEF**

For the reasons put forth in this Motion, Plaintiff asks for this Court to enter or order any or all of the following:

- Adverse inference jury instructions;
- Adverse inference jury instructions regarding the testimony of Dr. Steve Horton and Dr. John Allen;
- Adverse inference jury instructions on the credibility of all discovery provided by Defendant;
- Admission of fraud at trial;
- Reimbursement for attorney hours/time, including but not limited to time and travel to, from, and during depositions, all time related to the Defendant's Motion to Quash,

attorney time for prep and during the March 7, 2023 hearing, and all time related to Interrogatory No. 5;

- Issue a subpoena for cell phone logs from both Dr. Allen and Dr. Horton's cell phones on Dec. 14-15, with an in-camera review conducted to determine discrepancies;[8]
- Requirement that all discovery records be disclosed in document format, because we cannot rely on the testimony provided, including all prior discovery requests;
- Opportunity to supplement discovery with request for production above the maximum allowed by FRCP;
- Any or all other actions, sanctions, contempt orders, or referrals available for spoliation of evidence under the inherent power of this Court or any other sanctioning authority;
- Any or all other actions, sanctions, contempt orders, or referrals available for perjury under the inherent power of this Court or any other sanctioning authority;
- Any or all other actions, sanctions, contempt orders, or referrals available for tampering with witnesses under the inherent power of this Court or any other sanctioning authority;
- Any or all other actions, sanctions, contempt orders, or referrals available for violations of public records laws under the inherent power of this Court or any other sanctioning authority;
- Determination by this Court of whether Dr. Horton and Dr. Allen use or used Signal, WhatsApp, Wickr, SnapChat, FB Messenger, or any other apps to communicate;
- Extension of the discovery period (Plaintiff recommends 60-90 days).

Respectfully submitted this 15th day of May, 2023.

| | |
|---|---|
| */s/ Brandy Scott Mai* | */s/ Donald Hodge, Jr.* |
| Brandy Scott Mai, *admitted pro hac vice* | 4148 Palm St. |
| Joseph J. Steffen, Jr, *admitted pro hac vice* | Baton Rouge, LA 70808 |
| 223 W. York St. \| Savannah, GA 31401 | (337) 794-8873 |
| (877) 767-2453 | attorneydonaldhodge@gmail.com |
| brandy@joesteffen.com \| joe@joesteffen.com | |

**CERTIFICATE OF SERVICE**

---

[8] Plaintiff contends that by providing Dr. Allen's text message screenshots, Defendant has opened the door for this discovery request.

I, Joseph J. Steffen, Jr., the undersigned counsel for Plaintiff, do hereby certify that I have served the following counsel of record with the copy of this **Brief in Support of Motion for Sanctions** upon the following via electronic mail delivery service. Should these items not be cured within the allowable time frame of Fed. R. Civ. P. or by time allowed by this Court, items will be served to undersigned via the court's electronic filing system (PACER).

>JAY P. ADAMS | SARA G. WHITE
>HUDSON, POTTS & BERNSTEIN, LLP
>1800 Hudson Lane, Suite 300 | Monroe, Louisiana 71201
>Tel.: (318) 388-4400 | Fax: (318) 322-4194
>jadams@hpblaw.com | swhite@hpblaw.com

Respectfully submitted this <u>15th</u> day of <u>May</u>, 2023.

<u>*/s/ Brandy Scott Mai*</u>