UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| JUSTIN BARKER<br><br>Plaintiff,<br><br>v.<br><br>LOUISIANA SCHOOL FOR MATH SCIENCES & THE ARTS.<br><br>Defendant. | CASE NO. 1:21-cv-04419<br><br>JUDGE DRELL<br>MAGISTRATE JUDGE PEREZ-MONTES |

### MEMORANDUM IN OPPOSITION TO JUSTIN BARKER'S MOTION FOR SANCTIONS

**MAY IT PLEASE THE COURT**

Dr. Barker's assertion that LSMSA violated a Court order and intentionally withheld or destroyed electronic communications is not only demonstrably false but reckless. Importantly, LSMSA never violated a Court order, has reasonably responded in good faith to all discovery, and has made every effort to obtain discoverable information – including issuing a subpoena to Verizon Wireless. As addressed in detail below, LSMSA acted in good faith and no basis for an award of sanctions exists. Dr. Barker's Motion for Sanctions should be denied.

**I.   BACKGROUND**

On March 7, 2023, this Court issued a ruling which held, in part, that LSMSA was to treat

certain information from Dr. Steve Horton's phone as discoverable.[1] Specifically, the Court found information as to phone calls and text messages from Dr. Horton's phone on December 14-15, 2022, to other deponents, which related to the case, were discoverable.

On March 29, 2023, LSMSA submitted a supplemental response to Dr. Barker's discovery, in accordance with the Court's findings.[2] LSMSA provided a detailed phone log from Dr. Horton's phone. Screenshots of text messages between Dr. Horton and Dr. Allen on December 14 were produced. LSMSA also provided a detailed text log of messages exchanged between Dr. Horton and Dr. Key since the text messages themselves were not available.

On April 3, 2023, in an effort to further cooperate in discovery, LSMSA produced a redacted "usage log" from Verizon Wireless, which documented phone and text logs from Dr. Horton's phone on December 14-15.[3] Phone numbers were redacted for all persons not subject to the Court's March 7th ruling.

On April 6, 2023, LSMSA further supplemented discovery and produced a screenshot of text messages between Dr. Horton and Dr. Allen from December 15.[4]

On April 6, 2023, LSMSA also issued a Subpoena to Verizon Wireless to obtain "[A]ny and all records associated with cellular number (318) 527-9267, owned by Steven Horton, for the dates of December 14, 2022 and December 15, 2022."[5] Notice of the subpoena was sent to counsel for Dr. Barker. On April 18, 2023, Verizon faxed undersigned counsel and claimed the Subpoena was too vague. An Amended Subpoena was issued the following day, requesting production of "[A]ll text messages associated with cellular number (318) 527-9267, owned by Steven Horton,

---

[1] Document 31 – Minutes of Court.
[2] Exhibit B to Motion for Sanctions.
[3] Exhibit 1.
[4] Exhibit 2.
[5] Exhibit 3 – Subpoena to Verizon Wireless.

2

for the dates of December 14, 2022 and December 15, 2022."[6] Notice was again sent to counsel for Dr. Barker.

On May 15, 2023, Dr. Barker filed the Motion for Sanctions.[7] On May 18, 2023, undersigned counsel received production from Verizon Wireless. The entirety of the production is attached hereto as Exhibit 5 *en globo*.[8]

At the heart of this dispute is the fact that Dr. Horton does not maintain his text messages. While Dr. Barker suggests that text messages from Dr. Horton's phone were deleted *after* a request they be preserved, this is simply not true. The depositions in this case occurred over a two-day period on December 14 - 15, 2022. The depositions of Dr. Key, Sheila Kidd, and Dr. Allen were conducted on December 14. The deposition of Dr. Horton was taken on the second day of depositions, December 15, between 08:59am and 12:56pm. It was during the deposition of Dr. Horton that plaintiff's counsel first requested text messages be preserved. Thereafter, Dr. Horton complied with the request. Defense counsel relayed the request to all deponents later that day, after the conclusion of Dr. Barker's deposition. Unfortunately, efforts to recover the text messages which had been routinely deleted from Dr. Horton's phone were unsuccessful and LSMSA responded to plaintiff's supplemental discovery with the information available, screenshots of messages taken from Dr. Allen's phone.

LSMSA, and its attorneys, take their representations to this Court and all discovery obligations very seriously. Dr. Barker has failed to demonstrate that LSMSA, or its attorneys, acted in bad faith to ignore those responsibilities or gain an unfair advantage in this case. LSMSA did

---

[6] Exhibit 4 – Amended Subpoena to Verizon Wireless.
[7] Document 37.
[8] In further effort to comply with the Court's March 7th ruling, LSMSA produces the documents received secondary to the subpoena in an unredacted form. LSMSA requests that privacy be maintained for all phone numbers and personal information not subject to the Court's March 7th ruling.

not act in bad faith and its attorneys did not act unprofessionally in responding to discovery. LSMSA has made every effort to obtain and provide discoverable information. Notwithstanding Dr. Barker's implication otherwise, Dr. Horton did not delete any text messages *after* he was instructed to preserve them. In fact, Dr. Barker makes a number of allegations in her brief that are simply not true. LSMSA *did* provide a screen shot of the text exchange between Dr. Horton and Dr. Allen on December 15.[9] Undersigned counsel *did* respond to counsel's request for clarification as to the status of Dr. Horton's text messages with Dr. Allen.[10] These reckless statements merely highlight the problematic nature of Dr. Barker's arguments in her Motion for Sanctions. As shown more fully below, the Motion for Sanctions should be denied.

**II.   LAW AND ARGUMENT**

    **a. Dr. Barker Has Not Established a Basis for Sanctions.**

As an initial matter, Dr. Barker improperly relies on Federal Rule of Civil Procedure 37(b)(2). Federal Rule 37(b)(2)(A) provides as follows:

> *For Not Obeying a Discovery Order.* If a party or a party's officer, director, or managing agent--or a witness designated under Rule 30(b)(6) or 31(a)(4)--fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders.

Thus, "[f]or a court to impose sanctions under Rule 37(b),...there must be a violation of a discovery order issued pursuant to Rule 37(a)." *Reyes v. Julia Place Condo. Homeowners Assoc., Inc.*, No. 12-2043, 2016 WL 5871278, at *2 (E.D. La. Oct. 7, 2016) (citations omitted). This Court never issued a discovery order compelling LSMSA to produce documents at issue in the Motion for Sanctions, rather the Court issued a ruling finding certain items to be discoverable. The distinction is important since sanctions for refusing to follow a court order are different and more

---

[9] Exhibit 2.
[10] Exhibit 6.

4

serious than sanctions for a failure to comply with discovery. *McWilliams v. Exxon Mobil Corp.*, 111 So.3d 564, 569 (La.App. 3d Cir. 2013).

Yet, even if this Court considers its March 7th ruling to have been an order to compel production of the discoverable material, LSMSA has shown its inability to produce text messages directly from Dr. Horton's phone was because the text messages could not be recovered, rather than a willful violation. As this Court has previously recognized, court orders are substantially complied with when the opposing party cannot prove evidence is being deliberately withheld without just cause. *Luv N' Care, Ltd. v. Laurain*, No. 3:16-CV-00777, 2020 WL 412350, at *5 (W.D. La. Jan. 24, 2020).

### b. Dr. Barker's Requested Sanctions are Not Appropriate in Light of LSMSA's Objectively Reasonable Production.

If this Court determines sanctions are warranted, it must impose "the least onerous sanction which will address the offensive conduct." *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 78 (5th Cir. 2011) (citation omitted); *Topalian v. Ehrman*, 3 F.3d 931, 937 (5th Cir. 1993) (The sanction cannot be "vindictive or overly harsh reactions to objectionable conduct."); *see also In re Venom, Inc.*, No. 09-00067, 2010 WL 892203, at *1 n.2 (Bankr. E.D. Pa. Mar. 9, 2010) ("the absence of a violation of a prior order is a factor to be considered in determining the severity of an appropriate discovery sanction."). An adverse inference instruction as to the testimony of Dr. Horton, Dr. Allen, and *all materials* produced by LSMSA is too onerous and not appropriate.

Spoliation transpires through the destruction or alteration of evidence or by a party's failure to obey a duty to preserve evidence. *Murrell v. Casterline*, No. CV03-0257-A, 2010 WL 11681365, at *1 (W.D. La. Apr. 29, 2010). A party's duty to preserve evidence occurs upon notice that such evidence is relevant to the litigation. *Id.* Since electronically stored information is

5

routinely deleted, there is no spoliation until there is a duty to preserve the evidence, a culpable breach of that duty, and resulting prejudice. *Id.* In this instance, Dr. Horton had no duty to preserve his text messages until (at the very earliest) he was requested to do so by plaintiff's counsel. Since the text messages at issue were deleted prior to that time, LSMSA cannot be held responsible for a breach of a duty to preserve which did not yet exist. This is especially true considering the efforts subsequently taken by LSMSA to recover the electronic data.

Dr. Barker further requests attorneys' fees related to the taking of depositions, reimbursement for travel, LSMSA's Motion to Quash, and her attorneys' remote appearance before this Court on motions related to discovery. "Typically, Rule 37(b) sanctions are not available until the court has issued a specific discovery order, orally or in writing, instructing a party to submit to discovery so it is clear that the offending party has been alerted to what is required and the potential seriousness of noncompliance." *Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. 15-01533, 2017 WL 6388511, at *5 (E.D. La. Dec. 14, 2017). Beyond this type of discovery order, the Court's inherent powers "must be exercised with restraint and discretion." *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44, 111 S. Ct. 2122, 2133 (1991). Inherent power "is not a broad reservoir of power, ready at an imperial hand, but a limited source; an implied power squeezed from the need to make the court function." *NASCO, Inc. v. Calcasieu Television & Radio, Inc.*, -8- 4945976_1 894 F.2d 696, 702 (5th Cir. 1990). "When sanctions are not expressly authorized…, a district court may invoke its inherent power to award attorneys' fees and costs against parties or attorneys who 'act in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Cheshire v. Air Methods Corp.*, No. 15-0933, 2016 WL 6471235, at *3 (W.D. La. Nov. 1, 2016) (citing *Chambers*, 501 U.S. at 44); *see also Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998) ("The key to unlocking the court's inherent power is a finding of bad faith."). There is

simply no evidence of bad faith, vexatious, or wanton conduct on the part of LSMSA. Thus, Dr. Barker fails to establish any reasonable basis for this Court to exercise its inherent power to impose financial sanctions on LSMSA and Dr. Barker's request for various attorneys' fees and expenses should be denied.

Importantly, none of the text messages between Dr. Horton and Dr. Allen reveal any information that would impact Dr. Barker's ability to prepare her case. In other words, Dr. Barker cannot establish a claim of prejudice in this instance. The dispute relates to text conversations which occurred three years after the alleged events subject to Dr. Barker's suit. Dr. Barker makes no effort to demonstrate the importance of the text messages between Dr. Horton and Dr. Allen in terms of relevance to her claims or defenses, other than to speak generally about the credibility of witnesses – an issue for the trier of fact in any case. <u>The text messages between Dr. Horton and Dr. Allen have been produced,</u> albeit retrieved from Dr. Allen's phone. All available electronic information related to the text messages between Dr. Horton and Dr. Key has been produced.[11] Dr. Baker suggests text messages would reveal evidence of witness tampering in an effort to "get their stories straight." However, Dr. Key was the first witness deposed on December 14. Tellingly, Dr. Barker fails to explain how text messages between Dr. Key and Dr. Horton could influence any testimony when Dr. Key was the first witness to be deposed and Dr. Horton was present in the room throughout her entire deposition.

Finally, Dr. Barker requests there be an admission of fraud against LSMSA, a ruling tantamount to a default judgment. Such a sanction, as it relates to the failure to preserve electronic information, requires a specific finding of an intent to deprive on the part of LSMSA. Fed. R. C.

---

[11] LSMSA attempted to recover the discoverable text messages from Dr. Key's phone, however she also routinely deletes text messages, and they were not available. Efforts to retrieve text messages from Dr. Key's provider, AT&T were unsuccessful.

P. 37(e)(2)(c). As noted throughout, Dr. Barker offers no such evidence and this request is therefore not appropriate.

## III. CONCLUSION

For the foregoing reasons, Dr. Barker's Motion for Sanctions should be denied.

Date: June 5, 2023.

                                        Respectfully submitted,

                                        */s/ Sara G. White*
JAY P. ADAMS, Bar No.
SARA G. WHITE, Bar No. 34569
HUDSON, POTTS & BERNSTEIN, LLP
1800 Hudson Lane, Suite 300
Monroe, Louisiana 71201
Tel.: (318) 388-4400
Fax: (318) 322-4194
Email: jadams@hpblaw.com
Email: swhite@hpblaw.com
Attorneys for Defendant