b

# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA
## ALEXANDRIA DIVISION

| | |
|---|---|
| **JUSTIN BARKER,**<br>Plaintiff | **CIVIL DOCKET NO. 1:21-CV-04419** |
| **VERSUS** | **DISTRICT JUDGE DRELL** |
| **LOUISIANA SCHOOL FOR<br>MATH, SCIENCE & THE ARTS,**<br>Defendant | **MAGISTRATE JUDGE PEREZ-MONTES** |

## REPORT AND RECOMMENDATION

Before the Court is a "Motion for Sanctions" filed by Plaintiff Dr. Justin Barker ("Barker"). ECF No. 37.

Barker's Motion to Compel discovery (ECF No. 54) should be GRANTED and Defendant should be ordered to provide complete and unredacted disclosure of Horton's cell phone records for December 14 and 15, 2022.

Because Barker has shown that Defendant deleted text messages with the intent to conceal the messages, Barker's Motion for Sanctions should be GRANTED. Barker should be granted an adverse inference to show that: (1) Dr. Horton instructed the LSMSA employees how they were to testify in their depositions; (2) the LSMSA employees–Dr. Key, Dr. Allen, and Sheila Kidd–testified in their depositions in accordance with those instructions; and (3) the testimony in their depositions reflects the instructions given them by Dr. Horton.

And because Barker has shown that Defendant had the investigatory notes concerning his complaints shredded with the intent to conceal those notes, Barker's Motion for Sanctions (ECF No. 37) should be GRANTED as to those notes. Barker should be granted an adverse inference to show that LSMSA's Human Resource Officer Sheila Kidd's investigation into Barker's claims indicated that Barker was sexually harassed by Dr. Key and then terminated by Dr. Horton in retaliation for his filing a complaint and EEOC charge about the sexual harassment.

Barker's Motion for Attorney Fees (ECF No. 37) should also be GRANTED and Barker's counsel should be afforded an opportunity to submit a time report in accordance with Local Rule 54.2 to support an award of attorney fees.

## I.  Background

Barker filed a Complaint pursuant to 20 U.S.C. §§ 1681, *et seq.* ("Title IX"), 42 U.S.C. §§ 2000e,[1] *et seq.* ("Title VII"), and 42 U.S.C. § 1983,[2] alleging: (1)

---

[1] Federal courts have jurisdiction pursuant to 42 U.S.C. § 2000e over claims brought under Title VII. Barker asserts in his Complaint that he filed a timely complaint with the Equal Employment Opportunity Commission ("EEOC") and received his Right to Sue letter on September 27, 2021. ECF No. 1 at 4. Barker did not attach his Right to Sue letter to his Complaint or otherwise file it.

[2] For clarity, it is noted that Barker's gender-discrimination and hostile work environment claims are bought under Title VII only, since it preempts Title IX on those causes of action. *See Lakoski v. James*, 66 F.3d 751, 754 (5th Cir. 1995), *cert. den.*, 519 U.S. 947 (1996). However, Barker's claims of retaliation for his gender discrimination complaints fall under Title VII, and Barker's claims of retaliation for his whistle-blower activities as to misappropriation of student fees fall under Title IX. *See Taylor-Travis v. Jackson State University*, 984 F.3d 1107, 1118–19 (5th Cir.2021), *cert. den.*, 142 S. Ct. 101 (U.S. 2021); *see also Lewis v. Board of Supervisors of Louisiana State University and Agriculture and Mechanical College*, 2023 WL 8370096, at *3 (M.D. La. 2023).

employment discrimination based on gender and sexual orientation; (2) a hostile work environment; (3) harassment; and (4) retaliation (wrongful termination) for complaints of sexual harassment and for whistleblowing activity in reporting misuse of student fees. ECF No. 1. The named Defendant is Barker's former employer, the Louisiana School for Math, Science & the Arts ("LSMSA").[3] Barker contends his supervisor, Dr. Key, sexually harassed him and, when he complained about it, Dr. Horton retaliated against him by not renewing his employment contract. Barker contends that, after he filed Title VII grievances, Dr. Horton, the Executive Officer of LSMSA, with the sole authority to hire and fire the LSMSA employees at will, retaliated against him by not renewing his employment contract. LSMSA answered the Complaint. ECF No. 7.

---

Barker also cited § 1983 as a basis for his claims, but did not state which specific claim he is asserting under § 1983. "Title VII *is* the exclusive remedy for a violation of its own terms. But when a public employer's conduct violates both Title VII and a separate constitutional or statutory right, the injured employee may pursue a remedy under § 1983 as well as under Title VII." *Johnston v. Harris County Flood Control District,* 869 F.2d 1565, 1573 (5th Cir. 1989), *cert. den.,* 493 U.S. 1019 (1990). Moreover, "individuals seeking money damages for employment discrimination on the basis of sex in federally funded educational institutions may not assert Title IX either directly or derivatively through § 1983." *Lakoski*, 66 F.3d at 758.

[3] The Louisiana School for Math, Science and the Arts is placed within the Louisiana Department of Education pursuant to Louisiana Revised Statutes 17:1963(C). *See Louviere v. State, Louisiana Department of Education,* 2004-1897 (La. App. 1 Cir. 9/23/05), 923 So. 2d 146, 149 n. 3, *writ den.,* 2005-2258 (La. 4/24/06), 926 So. 2d 538. The LSMSA is a state high school created for the education of qualified gifted and talented children. La. R.S. 17:1964. The school is "independent of the control of the state superintendent and of all local and state education boards except its board of directors." La. R.S. 17:1963(C). The board of 24 directors serves as the local education agency for the school. La. R.S. 17:1964(A), (G). The chief administrative officer is a director who is selected by the Board to run the school. La. R.S. 17:1964(D)(4).

Barker filed this Motion for Sanctions (ECF No. 37), contending LSMSA, through its employees, deleted relevant text messages from the cell phones of LSMSA employees (Horton, Keys, Kidd, and Allen), and shredded the investigatory notes for Barker's complaints of sexual harassment, gender discrimination, and retaliatory discharge. Barker seeks sanctions against LSMSA, including adverse inference jury instructions, attorney fees and costs, as well as further discovery. ECF No. 1.

Barker filed a formal grievance at LSMSA against Dr. Kristina Pope Key in February 2020. ECF No. 30-3. Om March 30, 2020, Horton notified Plaintiff that his grievance was dismissed due to lack of evidence and that her employment contract would not be renewed. ECF No. 1 at 15-16. Barker next filed a complaint with the Equal Employment Opportunity Commission ("EEOC"). Barker received his right to sue letter from the EEOC on September 27, 2021. ECF No. 1 at 4.

Barker filed this Motion for Sanctions (ECF No. 37), alleging that LSMSA had failed to preserve electronically-stored information (on the cell phone of Dr. Horton, the LSMSA Executive Director) as required by Fed. R. Civ. P. 37(e) and 18 U.S.C. § 1519; provided evasive or incomplete disclosures; failed to comply with this Court's order; violated the Louisiana public records laws, La. R.S. 14:132; committed perjury, 18 U.S.C. §1621, 1623; and violated Louisiana and ABA Model Rules of Professional Conduct 3.3, 3.4, and 8.4.

Defendant opposes Barker's motion.

II.    <u>Law and Analysis</u>

Barker contends Defendant should be sanctioned pursuant to: Fed. R. Civ. P. 37(a)(4); Fed. R. Civ. P. 37(b)(2); Fed. R. Civ. P. 37(e); American Bar Association and Louisiana Model Rules of Professional Conduct 3.3, 3.4, and 8.4; 18 U.S.C. § 1519; 18 U.S.C. §§ 1621, 1623; and La. R. S. 14:132.

A.    <u>Facts and timeline alleged by the parties.</u>

During depositions on December 14 and 15, 2022, Dr. Horton (a deponent) texted with other deponents–Dr. Key (Barker's supervisor at LSMSA), Dr. Allen, and Sheila Kidd (the LSMSA Human Resources manager?).

Defendant filed a Motion to Quash and for Protective Order, resisting Plaintiffs discovery requests for phone calls and texts to and from Horton on December 14 and 15, 2022, during depositions.  ECF No. 22.

Plaintiff then filed a Motion to Compel Discovery as to certain student records.  ECF No. 25.

Following a hearing on both motions, the Court granted in part and denied in part Defendant's Motion to Quash and for Protective Order, and verbally ordered Defendant to treat Barker's requests as interrogatories and requests for production and held the following were discoverable by Plaintiff: (1) information on Horton's phone; and (b) phone calls and texts made only on December 14 and 15, 2022 to other deponents (including Allen), as to anything to do with this case or the

5

depositions.     ECF No. 31.     Plaintiff's Motion to Compel was taken under advisement.  ECF No. 31.

After the hearing, on March 29, 2023, defense counsel emailed a supplemental discovery response which contained information in narrative format, as well as screenshots of text messages sent between Dr. Horton and Dr. Allen on December 14, 2022.  Defendant admitted to the deletion of text messages between Dr. Horton and Dr. Key, stating Dr. Horton had deleted them on December 14, 2022, before he was asked to preserve them by Plaintiff's attorney on December 15, 2022.

Plaintiff also contends that defense counsel only provided the text times and information between Horton and Allen from Allen's phone – not Horton's – and did not state whether Horton had deleted his texts with Dr. Key, also.

After the hearing, on March 29, 2023, Defendant provided a supplemental response to Barker's discovery–a detailed phone log from Dr Horton's phone; screenshots of text messages between Horton and Allen on December 14; and a detailed text log of messages exchanged between Horton and Key (the messages themselves were not available).  On April 3, 2023, LSMSA produced a "usage log" from Verizon Wireless which documented phone and text logs from Horton's cell phone on December 14 & 15, 2022.  Phone numbers were redacted for all persons not subject to the Court's March 7, 2023 ruling. On April 6, 2023, LSMSA produced a screen shot of text messages between Horton and Allen from December 15, 2022.

LSMSA also issued a subpoena to Verizon Wireless to obtain "any and all records associated with" Horton's cell phone for December 14-15, 2022. On April 18, 2023, Verizon faxed defense counsel, informing them that the subpoena was too vague. On April 19, 2022, Defendant amended the subpoena.

In May 15, Plaintiff filed this Motion for Sanctions. ECF No. 37. Plaintiff claims she is entitled to sanctions for spoliation of evidence: (1) the deleted text messages between Dr. Horton and Key, Kidd, and Allen; and (2) destruction of the notes made during the investigation of Barker's sexual harassment claims by LSMSA Human Resources Officer Sheila Kidd.

On May 18, 2023, Verizon produced some of the cell phone records to defense counsel. However, the content of the text messages between Horton, Allen, and Keys was apparently not included. It is unclear whether Defendant requested the content of the text messages from Verizon.

Subsequent to Plaintiff filing his Motion for Sanctions, the Court granted Plaintiff's Motion to Compel for student documents (ECF No. 25) and ordered Defendant to provide all of the contested student documents within 21 days. ECF No. 45. After being granted an extension, Defendant timely produced the documents. ECF No. 49.

In response to Plaintiff's Motion for Sanctions, LSMSA contends Barker is not entitled to sanctions for Defendant's failure to comply with the Court's Order compelling it to provide discovery because the Court did not enter an Order

compelling it to provide the text messages. LSMSA also argues the text messages were deleted before Plaintiff's counsel asked LSMSA's employees to preserve them. LSMSA did not respond to the claim that the Title IX investigation notes had been destroyed.

> **B.**    **Section 1519 is not applicable to Barker's claims.**

Barker contends Defendant's destruction of the cell phone messages violates 18 U.S.C. § 1519, which states:

> **§ 1519. Destruction, alteration, or falsification of records in Federal investigations and bankruptcy**
>
> Whoever knowingly alters, destroys, mutilates, conceals, covers up, falsifies, or makes a false entry in any record, document, or tangible object with the intent to impede, obstruct, or influence the investigation or proper administration of any matter within the jurisdiction of any department or agency of the United States or any case filed under title 11, or in relation to or contemplation of any such matter or case, shall be fined under this title, imprisoned not more than 20 years, or both.

This provision sets forth a criminal felony that prohibits tampering with "any record, document, or tangible object" in an attempt to impede a federal investigation. *Yates v. United States,* 574 U.S. 528, 547 (2015). Section 1519 targets fraud in financial recordkeeping, and covers conduct intended to impede any federal investigation or proceeding. *See Yates*, 574 at 546-47. Section 1519 does *not* "create a coverall spoliation of evidence statute." *See Yates*, 574 at 547. Thus, Section 1519 is not properly raised in a civil action for a claim of spoliation of evidence by a litigant or witness.

8

Moreover, Barker lacks standing to pursue a criminal offense against Defendant in a civil action. *See Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021), *cert. den.,* 142 S. Ct. 2732 (U.S. 2022) ("It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the executive branch. And so it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution.").

**C.    Sections 1621 and 1623 are not applicable to Barker's claims.**

Barker also contends Defendant violated 18 U.S.C. §§ 1621 ("Perjury generally") and 1623 ("False declarations before grand jury or court"). Section 1621 and 1623 set forth felony criminal perjury offenses. As set forth above, Barker lacks standing to pursue a criminal offense against Defendant in a civil action.

**D.    La. R.S. 14:132 is not applicable.**

Barker contends that Defendant has violated La. R.S. 14:132, Injuring Public Records, which provides:

> A. First degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, filed or deposited, by authority of law, in any public office or with any public officer.

> B. Second degree injuring public records is the intentional removal, mutilation, destruction, alteration, falsification, or concealment of any record, document, or other thing, defined as a public record pursuant to R.S. 44:1 et seq. and required to be preserved in any public office or by any person or public officer pursuant to R.S. 44:36.

C.     (1) Whoever commits the crime of first degree injuring public records shall be imprisoned for not more than five years with or without hard labor or shall be fined not more than five thousand dollars or both.

(2) Whoever commits the crime of second degree injuring public records shall be imprisoned for not more than one year with or without hard labor or shall be fined not more than one thousand dollars or both.

This statute sets forth Louisiana felony criminal offenses. Louisiana criminal offenses not prosecuted in this Court. Moreover, Barker lacks standing to pursue criminal offenses against Defendant in a civil action.

### E.     Rule 37(a)(4) is not applicable.

Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions.

(a) Motion for an Order Compelling Disclosure or Discovery
          *          *          *

(4) Evasive or Incomplete Disclosure, Answer, or Response.

For purposes of this subdivision (a), an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond.

Plaintiff is not actually requesting an order compelling discovery, but is requesting sanctions for Defendant's failure to produce Dr. Horton's complete phone bill. Plaintiff complains the phone bill was redacted.

The sanctions are imposed for failure to obey a discovery order. There was not order compelling Defendant to provide an unredacted copy of his cell phone bill record.???

Specifically, Plaintiff contends Defendant provided a redacted copy of Horton's phone bill on April 3, 2023. Plaintiff complains that: (1) Defendant's discovery response stated the text messages between Horton and Key were deleted prior to the preservation request, but the phone bill shows there were text messages between them after the preservation request was made that were not provided to Plaintiff; (2) none of the December 14 texts between Horton and Allen are on the phone bill, despite the screen shots of December 14 texts from Allen's phone; (3) there are "suspicious time gaps" on the bill; (4) almost no text messages were sent from Horton's phone on December 14 during the depositions, despite his near-constant phone activity at that time, that are reflected in the screenshots from Allen's phone; and (5) Horton's phone bill shows text message exchanges between Horton and Allen on December 15, for which Defendant did not provide screenshots from Allen's phone; and Defendant has never responded to Plaintiff's supplemental interrogatory asking whether Dr. Horton deleted the text messages between himself and Dr. Allen. ECF No. 37-1 at 6-7.

As stated above, the Court did not initially order Defendant to provide the text messages from Horton's phone, but only informed Defendant that such information was discoverable. The order compelling discovery of the text messages was entered on September 20, 2023. Therefore, Defendant is not subject to sanctions for its responses before September 20. See Rule 37(a).

However, Plaintiff is entitled to an order compelling discovery of an unredacted copy of Dr. Horton's cell phone records of December 14 and 15, 2022, showing any phone calls or text messages between Horton and Key, Allen and/or Kidd.

**F.** **Rule 37(b)(2) is not applicable.**

Rule 37. Failure to Make Disclosures or to Cooperate in Discovery; Sanctions.

> (b) Failure to Comply with a Court Order.
>
> *     *     *
>
> (2) Sanctions Sought in the District Where the Action Is Pending.
>
> > (A) For Not Obeying a Discovery Order. If a party or a party's officer, director, or managing agent--or a witness designated under <u>Rule 30(b)(6)</u> or <u>31(a)(4)</u>--fails to obey an order to provide or permit discovery, including an order under <u>Rule 26(f)</u>, <u>35</u>, or 37(a), the court where the action is pending may issue further just orders. . . .

Defendant contends Plaintiff errs in relying on Rule 37(b)(2) because that is only for violation of a discovery order. Defendant contends the Court did not issue a discovery order compelling Defendant to produce the cell phone records, but instead issued a verbal ruling, at the March 7, 2023 hearing (ECF No. 31), finding certain items were discoverable. The subsequent order granting Plaintiff's Motion to Compel (ECF No. 45) address only the FERPA issues concerning student records that were raised in the Motion to Compel, and did not address Horton's cell phone records.

"Fed. R. Civ. P. 37(b) empowers the courts to impose sanctions for failures to obey discovery orders." *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.,* 685 F.3d 486, 488–89 (5th Cir. 2012). The language of Rule 37(b)(2) is explicit – sanctions may be imposed for failing to obey a court's *discovery order*.

Defendant is correct. The Court did not grant Plaintiff's Motion to Compel on March 7, but instead found only that the requested phone records were discoverable and deferred ruling on the Motion to Compel until later. ECF No. 45. Plaintiff's Motion for Sanctions was filed prior to the Court's ruling on Plaintiff's Motion to Compel and Order to Defendant to produce. Defendant was subsequently ordered to produce the phone records and text messages, and it then complied with that order.

Therefore, Rule 37(b)(2) is not applicable.

### G.    Rule 37(e)(2) applies to Barker's claims.

Plaintiff also relies on Fed. R. Civ. P. 37(e), contending Horton deliberately deleted the text messages. According to Plaintiff, his attorney questioned what Horton was doing on his phone on December 14 because Horton was present during the other depositions and been on his phone for a substantial part of the time. Plaintiff asks for sanctions due to spoliation of that evidence.

LSMSA argues that Plaintiff's counsel asked Horton to retain the texts during his deposition the morning of December 15, 2023, and that he did not delete any texts from that point forward. However, Horton contends he routinely deletes

13

texts and that he deleted his December 14, texts on December 14, before Plaintiff's counsel asked him to retain them.

Plaintiff also contends that Sheila Kidd, LSMSA's Human Resources Officer, testified during her deposition that she shredded the notes she took during interviews with witnesses for her investigation into Plaintiff's Title IX complaint. According to Plaintiff, in response to Plaintiff's Interrogatory Nos 9 & 10, LSMSA contradicted Kidd when it stated there were no handwritten notes taken during the investigation of Barker's complaints.  However LSMSA then contradicted itself when it stated in response to Interrogatory No. 11 that Sheila Kidd's investigation notes were given to an unidentified person named Ruth Prudhomme,[4] and that no one knew what happened to the notes after that.

### 1.    <u>The law as to spoliation</u>

"Spoliation of evidence is the intentional destruction of evidence to avoid providing it to an opposing party." *Herster v. Board of Supervisors of Louisiana State University*, 72 F. Supp. 3d 627, 639 (M.D. La. 2014).  "[I]f a party 'destr[oys]' or 'meaningfully alter[s] evidence,' otherwise known as 'spoliation,' a court may sanction them."  *Calsep A/S v. Dabral*, 84 F.4th 304, 311 (5th Cir. 2023) (citing *Guzman*, 804 F.3d at 713).  "A duty to preserve arises when a party knows or should know that certain evidence is relevant to pending or future litigation."  *Ashton v.*

---

[4] Apparently, Ruth Prudhomme is a retired LSMSA employee who served as the Comptroller and an Associate Director.  *See https://www.lsmsa.edu/news-detail?pk=1416648.*

*Knight Transportation, Inc.*, 772 F. Supp. 2d 772, 800 (N.D. Tex. 2011) (citing *Toth v. Calcasieu Parish,* 2009 WL 528245, at *1 (W.D. La. 2009)). "Once litigation is reasonably anticipated, a potential party to that litigation " 'must not destroy unique, relevant evidence that might be useful to an adversary.' " *Toth,* 2009 WL 528245 at *1 (quoting *Zubulake v. UBS Warburg, L.L.C.,* 220 F.R.D. 212, 216 (S.D.N.Y. 2003)). The party has "a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery and/or is the subject of a pending discovery request. *Toth,* 2009 WL 528245 at *1. The duty to preserve extends to the party's or potential party's employees "likely to have relevant information—the 'key players.'" *Ashton*, 772 F. Supp. 2d at 800 (citing *Zubulake,* 220 F.R.D. at 217)*; see also Toth,* 2009 WL 528245 at *1. "The duty to preserve evidence is a duty owed to the *court,* not to the party's potential adversary, hence, spoliation is considered an abuse of the judicial process." *Ashton*, 772 F. Supp. 2d at 800*.*

"Rule 37(e) addresses electronically stored information that should be preserved during litigation, as well as information that should be preserved in *anticipation* of litigation. A party has a duty to preserve evidence when it has notice that the evidence is relevant to litigation or should have known that the

evidence may be relevant to future litigation.[5]   Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the action." *In re Marquette Transportation Company Gulf-Inland, L.L.C.*, 2022 WL 393640, at *2 (W.D. La. 2022).

Rule 37(e) provides:

If electronically stored information that should have been preserved in the anticipation or conduct of litigation is lost because a party failed to take reasonable steps to preserve it, and it cannot be restored or replaced through additional discovery, the court:

(1) upon finding prejudice to another party from loss of the information, may order measures no greater than necessary to cure the prejudice; or

(2) only upon finding that the party acted with the intent to deprive another party of the information's use in the litigation may:

---

[5] "The court in Z*ubulake* set forth several steps that counsel should take 'to ensure compliance with the preservation obligation': (1) issue a litigation hold at the outset of litigation or whenever litigation is reasonably anticipated; (2) clearly communicate the preservation duty to 'key players'; and (3) 'instruct all employees to produce electronic copies of their relevant active files' and 'separate relevant backup tapes from others.'" *Owens v. Board of Supervisors of Louisiana State University & Agricultural & Mechanical College*, 2023 WL 8440968, at *7 (M.D. La. 2023) (quoting *Zubulake,* 220 F.R.D. at 433–34). "As the *Zubulake* court noted, '[o]ne of the primary reasons that electronic data is lost is ineffective communication with information technology personnel.'" *Owens*, 2023 WL 8440968, at *7 (quoting *Zubulake,* 220 F.R.D. at 434). "A party's discovery obligations do not end with the implementation of a 'litigation hold'—to the contrary, that's only the beginning. Counsel must oversee compliance with the litigation hold, monitoring the party's efforts to retain and produce the relevant documents." *Owens,* 2023 WL 8440968, at *5 (quoting *Zubulake,* 220 F.R.D. at 432).

(A) presume that the lost information was unfavorable to the party;

(B) instruct the jury that it may or must presume the information was unfavorable to the party; or

(C) dismiss the action or enter a default judgment.

"Thus, before a court may sanction a party for the loss of electronically stored information, the following predicate elements must exist: (1) the information should have been preserved; (2) the information was lost due to a party's failure to take reasonable steps to preserve it; and (3) the lost information cannot be restored or replaced through additional discovery. After the three predicate elements are established, the court considers whether sanctions are warranted under subsection (e)(1) or (e)(2)." *In re Marquette Transportation Company Gulf-Inland, L.L.C.*, 2022 WL 393640, at *1.

"Rule 37(e)(1) applies if the court finds that another party has been prejudiced by the loss of the information.  In that circumstance, the court may order measures no greater than necessary to cure the prejudice." *In re Marquette Transportation Company Gulf-Inland, L.L.C.*, 2022 WL 393640, at *1–2.

"Rule 37(e)(2) is applicable 'only upon finding that the party acted with the *intent to deprive* another party of the information's use in the litigation.'  If the intent to deprive is found, prejudice is presumed, and the court may impose an

adverse inference, dismiss the action or enter a default judgment." *In re Marquette Transportation Company Gulf-Inland, LLC*, 2022 WL 393640, at *1–2.[6]

The moving party must show either prejudice—for purposes of Rule 37(e)(1)—or show the opposing party acted with the intent to deprive it evidence, to obtain an adverse inference sanction under Rule 37(e)(2). *In re Marquette Transportation Company Gulf-Inland, L.L.C.*, 2022 WL 393640, at *3.

"A culpable state of mind *is* necessary for sanctions of adverse inference, dismissal, or default judgment. Fed. R. Civ. P. 37(e)(2)." *Owens*, 2023 WL 8440968, at *2. "An adverse inference or sanctions are permitted against the spoliator only upon a showing of 'bad faith' or 'bad conduct.'" *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015) (citing *Condrey v. SunTrust Bank of Georgia,* 431 F.3d 191, 203 (5th Cir. 2005)).

"Bad faith, in the context of spoliation, generally means destruction for the purpose of hiding adverse evidence." *Guzman*, 804 F.3d at 713 (citing *Mathis v. John Morden Buick, Inc.*, 136 F.3d 1153, 1155 (7th Cir. 1998), cert. den., 525 U.S. 898 (1998)). "The term 'bad faith' has been described as conduct involving 'fraudulent intent and a desire to suppress the truth.'" *Slabisak v. University of Texas Health Sciences Center at Tyler*, 2018 WL 4842690, at *3 (E.D. Tex. 2018)

---

[6] But a court may impose 'measures no greater than necessary to cure the prejudice' if it finds that evidence that should have been preserved was irrevocably lost because a party failed to take reasonable steps to protect it. Fed. R. Civ. P. 37(e), (e)(1)." *Owens*, 2023 WL 8440968, at *2. "[T]he Court may impose appropriate sanctions to cure even an inadvertent loss of information if it should have been preserved in anticipation of litigation." *Id.*

(citing *Ashton*, 772 F. Supp. 2d at 800. "Mere negligence is not enough, for it does not sustain an inference of consciousness of a weak case." *Toth*, 20009 WL 528245, at *1 (citing *Vick v. Texas Employment Commission,* 514 F.2d 734, 737 (5th Cir. 1975)).

The authority to sanction litigants for spoliation arises jointly under the Federal Rules of Civil Procedure and the court's own inherent powers.[7] *Toth,* 2009 WL 528245, at *2. "Possible sanctions include an adverse evidence jury instruction, excluding greater or lesser parts of the destroying party's evidence, dismissing a party's claims in whole or in part, or granting default judgment against a party in whole or in part." *Toth,* 2009 WL 528245, at *2. "Factors in determining the appropriate sanctions for wrongful destruction of evidence include: '1) the degree of fault of the party who altered or destroyed the evidence; 2) the degree of prejudice suffered by the opposing party; and 3) whether there is a lesser sanction that will

---

[7] "Federal courts have undisputed, inherent power to regulate practice in cases pending before them." *Carroll v. Jaques*, 926 F. Supp. 1282, 1288 (E.D. Tex. 1996), *aff'd*, 110 F.3d 290 (5th Cir. 1997) (citing *Chambers v. NASCO, Inc.,* 501 U.S. 32, 43 (1991)). "This power originates from the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Carroll*, 926 F. Supp. at 1288 (*quoting Natural Gas Pipeline Company of America v. Energy Gathering, Inc.,* 2 F.3d 1397, 1406 (5th Cir. 1993), *cert. den.,* 510 U.S. 1073 (1994)). "In exercising this power, a court can sanction a party for abuse of judicial processes." *Carroll*, 926 F. Supp. at 1288 (*quoting Chambers*, 501 U.S. at 43–44); *see also Michael v. Boutwell*, 138 F. Supp. 3d 761, 784 (N.D. Miss. 2015) ("This Court has the power as part of its inherent power over an attorney and/or party to sanction both Defendant and its counsel for their egregious behavior, especially where the Defendant's conduct is designed to intimidate and threatened a party or witness and to subvert the discovery process.").

avoid substantial unfairness to the opposing party and if the fault is serious, will serve to defer such conduct by others in the future.'"  *Toth,* 2009 WL 528245, at *2.

### 2.  <u>LSMSA and its employees had a duty to preserve the text messages concerning the case.</u>

Barker contends the text messages should have been preserved because they dealt directly with evidence–deposition testimony–in the case.  Apparently, Horton was telling his employees how he wanted them to testify.  Horton contends the messages were deleted before Barker's counsel asked the deponents to preserve the messages and, additionally, argues the messages were on his personal cell phone rather than a work phone.

A request to preserve the texts was not required to invoke Defendant's duty to preserve potential electronic evidence.  "A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant" to future litigation.'"  *Owens*, 2023 WL 8440968, at *4 (quoting *Guzman*, 804 F.3d at 713), and Fed. R. Civ. P. 37(e), advisory committee's note on 2015 amendment (stating that rule requires preservation of evidence when litigation is reasonably foreseeable)).  "'A variety of events may alert a party to the prospect of litigation.'"  *Owens*, 2023 WL 8440968, at *4 (quoting Fed. R. Civ. P. 37(e), note on 2015 amendment).

LSMSA's statutory duty to preserve evidence arose no later than January 24, 2022, when it signed the waiver of service of the Complaint in this matter.  ECF No. 5.  *Compare Owens*, 2023 WL 8440968, at *4.

### 3.   LSMSA failed to take reasonable steps to preserve the text message content.

A party responding to discovery must produce responsive documents not only that are within that party's actual, physical possession, but also documents that are within the party's constructive possession, custody, or control. Fed. R. Civ. P. 26(a)(1)(A)(ii); 34(a)(1). "A party has 'control' over documents or materials that it has the legal right to obtain even though it has no copy and even if the documents are owned or possessed by a nonparty." *Baqer v. St. Tammany Parish Government,* 2023 WL 4846828 at *5 (E.D. La. 2023) (citing *Becnel v. Salas,* 2018 WL 691649, at * 3 (E.D. La. 2018)).  "Thus, documents owned or possessed by agents, attorneys, and other third parties hired by a party that the party can reasonably obtain the requested information from upon its own request fall within that party's custody or control.  The burden is on the party seeking discovery to show that the other party has control over the material sought." *Baqer,* 2023 WL 4846828 at *5.

"Even when litigation is foreseeable, a party is not required to preserve 'every shred of paper, every e-mail or electronic document, and every backup tape.'" *Owens*, 2023 WL 8440968, at *4 (quoting *Alabama Aircraft Industry, Inc. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017), *aff'd*, 2022 WL 433457 (11th Cir. 2022),

21

and *In re Ethicon, Inc. Pelvic Repair System Product Liability Litigation*, 299 F.R.D. 502, 517–518 (S.D. W. Va. 2014)). "But a party *is* required to preserve evidence from 'those employees likely to have relevant information—the "key players" in the case,' and applies to 'unique, relevant evidence that might be useful to the adversary.'" *Owens*, 2023 WL 8440968, at \*4 (quoting *In re Ethicon, Inc.,* 299 F.R.D. at 517); *see also In re Bertucci Contracting Co., L.L.C.*, 2014 WL 5483707, at \*2 (E.D. La. 2014).

As LSMSA employees who are intricately tied to Plaintiffs' claims, there can be no doubt that the Horton and Keys are key players whose communications between each other and with third parties would be uniquely relevant to this matter.

LSMSA never specifically subpoenaed the text message contents from Verizon. But it persists in telling this Court, with no certainty whatsoever, that Verizon "must not" preserve text message content. This Court handles many criminal cases and can assert with certainty that text message content is available on Verizon's servers for a limited period of time. Had it been timely subpoenaed, it would have been provided.

Moreover, the fact that the text messages were on Horton's (as well as Key's, Allen, and Kidd's) personal cell phones rather that work phones is not relevant. According to Defendant, it did not issue company cell phones to Horton, Key, Allen, or Kidd. ECF No. 54 at 1. "Employers have control over employment-related data

for preservation purposes even when it exists on an employee's personal device." *Owens*, 2023 WL 8440986, at *4.

In this case, LSMSA failed to ask Verizon specifically for the text message content and has engaged in dilatory tactics. There is little doubt that, over a year after the text messages were sent and deleted, the text message content is no longer available from Verizon. Therefore, LSMSA failed to take reasonable steps to preserve that evidence.

4.     <u>The lost information cannot be restored or replaced through additional discovery</u>.

Horton and Keys, both employed by the LSMSA, deleted text messages concerning deposition testimony from their phones. Although the phones were their personal cell phones, not paid for by LSMSA, the phones were used within the course and scope of their employment with LSMSA, including during depositions of defense witnesses that were held in this action.

The crux of Barker's complaint is that Horton, the supervisor of all of the witnesses deposed that day, texted the witnesses about "getting their stories straight" and then deleted the texts.

The text content is gone, destroyed by LSMSA's witnesses. Therefore, Barker could attempt to reconstruct the content of the texts through further depositions. However, if a witness committed perjury in the original deposition, it is unlikely he or she will admit that in a second deposition.

23

5.  **Barker is entitled to an adverse inference.**

The moving party must show either prejudice—for purposes of Rule 37(e)(1)—or show the opposing party acted with the intent to deprive it evidence, to obtain an adverse inference sanction under Rule 37(e)(2).

a.  **Rule 37(e)(1) does not apply because Barker has not shown prejudice.**

Rule 37(e)(1) applies if the court finds that another party has been prejudiced by the loss of the information.    In that circumstance, the court may order measures no greater than necessary to cure the prejudice." *In re Marquette Transportation Co. Gulf-Inland, L.L.C.*, 2022 WL 393640, at *2.

A party suffers prejudice where it cannot present "evidence essential to its underlying claim." *Coastal Bridge Co., L.L.C. v. Heatec, Inc.*, 833 Fed. Appx. 565, 575 (5th Cir. 2020).  LSMSA claims that Barker cannot show that any relevant evidence has actually been lost and thus there can be no showing of prejudice.  But, as the district court stated in *Owens*, 2023 WL 8440968, at *7, "to allow such an argument would be to allow every spoliator to claim lack of evidence implies lack of relevance."

Barker contends that Horton told deponents, via text messages, what to say in their depositions.  But Barker does not state specifically how their testimony was altered by Horton's text messages and how that affected Barker's underlying claim.  Nor has Barker provided transcripts of the depositions.

### b.  Rule 37(e)(2) applies to this case.

"Rule 37(e)(2) is applicable 'only upon finding that the party acted with the *intent to deprive* another party of the information's use in the litigation.'  If the intent to deprive is found, prejudice is presumed, and the court may impose an adverse inference, dismiss the action, or enter a default judgment." *In re Marquette Transportation Co. Gulf-Inland, L.L.C.*, 2022 WL 393640, at *2.  "A culpable state of mind *is* necessary for sanctions of adverse inference, dismissal, or default judgment. Fed. R. Civ. P. 37(e)(2)." *Owens*, 2023 WL 8440968, at *2.

If, as Barker alleges, the texts concerned instructions as to how the employee-witnesses should testify in their depositions, or reflected an attempt to suborn the witnesses, it is reasonable to believe the texts were deleted in an effort to conceal the information in them.  Moreover, Defendant has not been forthcoming with its discovery as to these texts, has engaged in dilatory tactics, and did not take reasonable steps to preserve that evidence.  Those factors weigh in favor of a finding that Defendant deleted the texts with the intent to conceal them from Barker.

Therefore, Barker is entitled to an adverse inference, that the texts would have shown that: (1) Dr. Horton instructed the LSMSA employees how they were to

testify in their depositions; (2) the LSMSA employees–Dr. Key, Dr. Allen, and Sheila Kidd–testified in their depositions in accordance with those instructions; and (3) the testimony in their depositions reflects the instructions given them by Dr. Horton.

### 6.    The statutory duty to preserve Human Resource Officer Kidd's investigatory notes.

Barker also contends that Sheila Kidd testified that she shredded her investigatory notes for Barker's complaint and EEOC claim.  Barker asserts this is another instance of spoliation of evidence.

"A party's duty to preserve evidence comes into being when the party has notice that the evidence is relevant to the litigation or should have known that the evidence may be relevant." *Jim S. Adler, P.C. v. McNeil Consultants, L.L.C.*, 2023 WL 2699511, at *10 (N.D. Tex. 2023) (quoting *Guzman v. Jones*, 804 F.3d 707, 713 (5th Cir. 2015)); Fed. R. Civ. P. 37(e), advisory committee notes, 2015 amendments ("Rule 37(e) is based on this common-law duty; it does not attempt to create a new duty to preserve. The rule does not apply when information is lost before a duty to preserve arises."). "When the duty arises, even information subject to routine deletion may fall within the duty's reach, requiring that the deletion process be interrupted." *Jim S. Adler, P.C.*, 2023 WL 2699511, at *10 (quoting *Ringers Technologies, L.L.C. v. Harmer*, 2020 WL 6385813, at *2 (S.D. Tex. 2020), *report & recommendation adopted*, 2020 WL 6384349 (S.D. Tex. 2020)).

Section 1602.14 sets forth the recordkeeping and reporting requirements for Title VII, the ADA American with Disabilities Act), and Gina (Genetic Information Nondiscrimination Act).    See 29 C.F.R. § 1602.1.    Section 1602.14 states that "[w]here a charge of discrimination has been filed, . . . the respondent employer shall preserve all personnel records relevant to the charge or action until final disposition of the charge or action." *Herster*, 221 F.Supp.3d at 797.  "The date of final disposition of the charge or the action means the date of expiration of the statutory period within which the aggrieved person may bring an action in a U.S. District Court or, where an action is brought against an employer either by the aggrieved person, the Commission, or by the Attorney General, the date on which such litigation is terminated."  29 C.F.R. § 1602.14.

A similar spoliation issue arose in *E.E.O.C. v. Resources for Human Development, Inc.*, 843 F. Supp. 2d 670 (E.D. La. 2012).  The court found the destruction or loss of contemporaneous notes the employer's directors made regarding their frequent conversations with each other about a disabled employee's alleged job performance deficiencies was a bad faith violation of employer's legal duty to obtain and preserve notes, where the employer had a document retention policy that complied with internal and legal standards, and the employer offered no credible reason for its failure to give specific instructions to its directors to retain all records of documents concerning the charging employee.

27

LSMSA did not refute (or otherwise discuss) the issue raised by Barker as to the destruction of the investigatory notes concerning Barker's discrimination, sexual harassment, and retaliation claims. Therefore, the Court assumes Barker's contentions are correct.

Pursuant to the clear regulatory directive for EEOC cases in 17 C.F.R. § 1602.14, the investigatory notes should have been preserved until the time for Barker to file suit had expired or, since he filed a suit, until the termination of this lawsuit. According to the person who investigated Barker's claims and made the notes–Sheila Kidd-she shredded the notes. Thus the information was not preserved in accordance with the EEOC regulation. It was lost due to the failure of LSMSA to take reasonable steps to preserve it. Because Kidd admits she shredded her investigatory notes, they cannot be restored or replaced through additional discovery.

Kidd testified in her deposition, under oath, that she shredded her notes. LSMSA's responses to interrogatories–denying the existence of any investigatory notes and, conversely, stating that Kidd had given her investigatory notes to Ruth Prudhomme and no one knew what had happened to them after that–appear to be an attempt to the improper destruction of the documents. It is not shown when Kidd shredded her investigatory notes–it is possible that they were never provided to the EEOC.

Because LSMSA apparently (at the least) failed to direct its employee of its legal duty to preserve those documents until the conclusion of this lawsuit, and may (at the most) have directed Kidd to destroy the documents, and because LSMSA then attempted to mislead Barker as to what occurred, a finding that LSMSA acted with the intent to deprive Barker the information's use in this litigation is warranted.

Because it should be inferred that LSMSA destroyed the evidence to conceal it from Barker, the Court should presume that the lost information was unfavorable to the party and/or instruct the jury that it may or must presume the information was unfavorable to the party.

### 7. <u>Barker is entitled to an award of attorney's fees and expenses.</u>

"Courts also routinely award attorney's fees and expenses under Rule 37(e), to cover the time and effort necessary to bring the issue of spoliation before the court." *Jim S. Adler, P.C.*, 2023 WL 2699511, at *10 (citing *Balancecxi, Inc. v. International Consulting & Research Group, L.L.C.*, 2020 WL 6886258, at *15 (W.D. Tex. 2020), *report & recommendation adopted*, 2021 WL 2194900 (W.D. Tex. 2021)).

Under Rule 37(a)(4), because the Court should grant Plaintiff's motion for sanctions, the Court should order Defendant to pay Plaintiff's reasonable expenses and fees incurred in making the motion unless one of the rule's exceptions applies.

*See Carroll*, 926 F. Supp. at 1288.  The Local Rules for the Western District of Louisiana provide as follows:

> LR54.2  Award of Attorney's Fees
>
> In all cases where attorney's fees are sought, the party desiring to be awarded such fees shall submit to the court a contemporaneous time report reflecting the date, time involved, and nature of the services performed.  The report shall be in both narrative and statistical form and provide hours spent and justification thereof.
>
> Any judge of the court may, for good cause shown, relieve counsel of the obligation of filing such a report with the court.

The Court must determine whether the total number of hours claimed for reimbursement are reasonable, and must "exclude all time that is excessive, duplicative, or inadequately documented."  *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993).

Plaintiff has failed to support her Motion for Attorney Fees with a time and expense report.  Without such a report, the Court cannot determine the reasonableness of the claimed fees and costs.  Therefore, Plaintiff should be afforded an opportunity to submit a time report in accordance with Local Rule 54.2.

III.    <u>CONCLUSION</u>

Based on the foregoing,

IT IS RECOMMENDED that the Court GRANT Barker's Motion to Compel discovery and complete disclosure of Horton's cell phone records for December 14

and 15, 2022, without redactions as to the of the records of any messages or calls between Horton and Allen, Key, and/or Kidd.

IT IS RECOMMENDED that the Court GRANT Barker's Motion for Sanctions (ECF No. 37) and enter an adverse inference, pursuant to Rule 37(e)(2), that the deleted texts would have shown that: (1) Dr. Horton instructed the LSMSA employees how they were to testify in their depositions; (2) the LSMSA employees–Dr. Key, Dr. Allen, and Sheila Kidd–testified in their depositions in accordance with those instructions; and (3) the testimony in their depositions reflects the instructions given them by Dr. Horton.

IT IS RECOMMENDED that the Court GRANT Barker's Motion for Sanctions (ECF NO. 37) for destruction of Sheila Kidd's investigatory notes, and either presume that the lost information was unfavorable to LSMSA, or instruct the jury that it may or must presume the information was unfavorable to LSMSA.

IT IS RECOMMENDED that the Court GRANT Plaintiff's Motion for Attorney Fees (ECF No. 37) and afford Plaintiff an opportunity to submit a time and expense report for this motion, in accordance with Local Rule 54.2.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No

other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen (14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this _8th_ day of March 2024.

Joseph H.L. Perez-Montes
United States Magistrate Judge